Paul C. THOMPSON and Judy Thompson, husband and wife; G.R.B., Inc., a Washington corporation; Gregg A. Reichert and Karen Reichert, husband and wife; Gaius D. Kazen and Donna J. Kazen, husband and wife; John R. Stertz and Helen E. Stertz, husband and wife; Edward P. Picardo and Margery Picardo, husband and wife; Convenient Stores, Inc., a Washington corporation; James W. McConville and Sharon A. McConville, husband and wife; James J. Fordon, Inc., a Washington corporation; Paul Mann and Judy L. Mann, husband and wife; Clyde D. Thysell and Merla R. Thysell, husband and wife; George Nelson; Robert W. Beutlich; Carmin, Inc., a Washington corporation; Delton L. Halvorson and Betty C. Halvorson, husband and wife, Surjit S. Ahluwalia and Daljit Ahluwalia, husband and wife, Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY, Defendant.

No. C85–2423M.

United States District Court, W.D. Washington.

Oct. 20, 1986.

---

Howard E. Bundy, Bellevue, Wash., for plaintiffs.

Bruce M. Pym, Douglas C. Berry, Graham & Dunn, Seattle, Wash., for defendant.

## ORDER

McGOVERN, Chief Judge.

Before the court are cross motions for partial summary judgment and to strike portions of two depositions.

Plaintiffs are present or former owners of ARCO "am/pm Mini Markets" and ARCO gasoline franchises in the State of Washington. Defendant Atlantic Richfield (ARCO) is the franchisor. Plaintiffs seek permanent injunctive relief barring Atlantic Richfield from imposing a $20,000 franchise renewal fee. Defendant cross moves for partial summary judgment, seeking dismissal of plaintiff's claim that ARCO violated RCW 19.100 by failing to disclose the amount of a future franchise fee.

### I. *The Motion to Strike*

Plaintiffs have moved the court to strike the deposition testimony of Richard Lee Dawson and Craig D. Corp. The testimony was filed in support of defendant's motion for partial summary judgment and in opposition to plaintiffs' motion for partial summary judgment. Plaintiffs seek to exclude the testimony because it was not taken in this case, because the subject matter of the previous case purportedly involved different facts and because the testimony allegedly is more prejudicial than probative.

At issue here is the proper interpretation of Fed.R.Civ.P. 32(a)(4).

If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts. Substitution of parties pursuant to Rule 25 does not affect the right to use depositions previously taken; and, when an action has been brought in any court of the United States or of any State and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor. A deposition previously taken may also be used as permitted by the Federal Rules of Evidence.

Plaintiffs argue the depositions should be excluded because the same parties are

not involved here and purportedly different subject matters were at issue in the prior case.

The testimony in the depositions largely is irrelevant to the legal issues in the pending motions, and accordingly, the motion to strike is GRANTED.

## II. *The Motions for Summary Judgment*

■ Plaintiffs' claims for relief rise or fall on the interpretation of several relevant Washington statutes. Plaintiffs contend that pursuant to certain provisions of the Washington Franchise Investment Protection Act, specifically RCW 19.100.-180(2)(i), they had an automatic right to renew their franchises with ARCO. This contention is based upon plaintiffs' reading of the first five words of the statute, which says it is unlawful for a franchisor to "refuse to renew a franchise...." Based upon this single phrase, plaintiffs contend that the statute gave them the unequivocal, automatic right to renew their franchises. Plaintiffs' argument is illogical because it does not consider the statute as a whole:

Relation between franchisor and franchisee—Rights and prohibitions. Without limiting the other provisions of this chapter, the following specific rights and prohibitions shall govern the relation between the franchisor or subfranchisor and the franchisees:

.        .        .        .        .

(i) Refuse to renew a franchise without fairly compensating the franchisee for the fair market value, at the time of expiration of the franchise, of the franchisee's inventory, supplies, equipment, and furnishings purchased from the franchisor, and good will, exclusive of personalized materials which have no value to the franchisor, and inventory, supplies, equipment and furnishings not reasonably required in the conduct of the franchise business: **Provided,** That compensation need not be made to a franchisee for good will if (i) the franchisee has been given one year's notice of nonrenewal and (ii) the franchisor agrees in writing not to enforce any covenant which restrains the franchisee from competing with the franchisor: **Provided further,** That a franchisor may offset against amounts owed to a franchisee under this subsection any amounts owed by such franchisee to the franchisor. RCW 19.100.180(2)(i)

This statute, on its face, clearly does not create an automatic right to renew a franchise. It simply says a franchisor may not refuse to renew a franchise without compensating the franchisee for the fair market value of the franchise, for his equipment, materials and goodwill. But the statute cannot be read as providing an *unequivocal right* to renewal. Instead, by implication it provides that a franchise is terminable at will, *as long as* the franchisor fairly compensates the franchisee according to the specific terms of the statute.

■ The second major question intertwined in these motions is whether Washington law requires a franchisor to disclose to a franchisee the terms of a future franchise agreement which may be negotiated after expiration of the initial franchise. Plaintiffs contend that disclosure of the demanded $20,000 franchise renewal fee was mandatory under Washington law, and that the fee should have been disclosed when ARCO and the franchisees first entered into the contracts. If plaintiffs are correct, Atlantic Richfield was required to disclose in its *initial* offering circular the specific terms of all franchise agreements that might be offered to a franchisee three or more years in the future.

Although plaintiffs acknowledge that ARCO stated in the 1979 and 1981 offering circulars that "operator may be required to pay renewal fee for subsequent renewals....", plaintiffs contend that language was not a clear, concise and understandable disclosure. Plaintiffs additionally point out that when the franchisees received the offering circulars which currently are in effect, there was no reference to a renewal fee. It is argued that until the $20,000 renewal fee was demanded by ARCO in the

fall of 1985, the plaintiffs reasonably could assume that their current franchises were renewable without payment of a fee. Therefore, ARCO purportedly failed to disclose a material fact and now should be permanently enjoined from imposing or collecting the $20,000 renewal fee and from refusing to renew any of the plaintiffs' franchises.

The Washington Franchise Act requires a franchisor to make certain disclosures to a perspective franchisee about itself and the franchise agreement. RCW 19.100.080. By regulation, the disclosures are to be made in an "Offering Circular" patterned on the Uniform Franchise Registration Application, more frequently referred to as "The Uniform Franchise Offering Circular" (UFOC). WAC 460-80-315. The UFOC was developed by the Midwest Securities Commissioners Association, a group of state securities administrators and representatives from the Federal Trade Commission, to make uniform the format and content of disclosures required to be made in states having franchise disclosure and registration laws. See generally, 1 CCH, Business Franchise Guide § 430 at 811.

Item 17 of the Washington UFOC regulations provides:

> With respect to the franchise and any related agreements state the following:
>
> (a) The term and whether such term is affected by any agreement (including leases and subleases) other than the one from which such term arises,
>
> (b) the conditions under which the franchisee may renew or extend,
>
> (c) the conditions under which the franchisee may refuse to renew or extend. WAC 460-80-315(17)

Plaintiffs contend any conditions to be placed upon the franchisee at any renewal of the "am/pm" franchises had to be disclosed to the plaintiffs in the first offering circular before the franchise agreement was signed by plaintiffs, and that the conditions had to be set forth in a "clear, concise fashion that would be readily understandable". See WAC 460-80-310.

Defendant takes an entirely different view of the language of WAC 460-80-315(17): The language of subsection (b) stating that a franchise agreement must specify the conditions under which the franchisee may renew or extend does not mean that the franchisor must set forth the future contract terms governing renewal. Instead, subsection (b) merely requires the franchisor to disclose whether the franchise agreement itself grants a right of renewal, and if so, the conditions precedent to the exercise of that right.

Plaintiffs' reading of the WAC provision contravenes the "Guidelines for Preparation of the Uniform Franchise Offering Circular", *supra*. 1 CCH, Business Franchise Guide § 430. The Guidelines list two sets of alternative "instructions" necessary to satisfy the requirements of item 17(b), neither of which even remotely resembles plaintiffs' interpretation. The first set of instructions apply if the franchise agreements grant an automatic right of renewal, which the UFOCs here do not. Instructions to item 17, UFOC Guidelines, CCH, Business Franchise Guide § 5, 817 at 8497. The second set of instructions apply "if [the] franchise agreement does not grant franchisee a right to renew or extend." *Id.* at 8498. The second set of instructions provide that the UFOC should:

> (1) State that the franchise agreement does not grant to the franchisee a right to renew or extend.
>
> (2) Disclose the provisions in the franchise agreement that relate to expiration of the franchise and if expiration is treated as a termination, disclose the same here and/or under items 17(f) and (g) with appropriate cross reference.
>
> (3) If the franchise agreement does not grant to the franchisee the right to renew or extend, but the franchisor's policy is to do so, such policy may be disclosed here, provided same is clearly indicated to be only the franchisor's policy and not a binding obligation of the franchisor and there is included a statement of the actual number, as well as the percentage of franchisees which in the three year period immediately proceeding

the date of the offering circular have been renewed or extended without having any right to do so pursuant to the franchise agreement.

Defendant argues that the Guidelines pertaining to item 17 of the UFOC are intended to provide sufficient information to prospective franchisees as to whether or not the proposed franchise agreement grants a right to enter into a new agreement after the initial agreement expires, and, if so, the conditions precedent the franchisee's exercise of that right. It defies logic to argue that Atlantic Richfield must disclose to its "am/pm" franchisees at the initial offering the unknown contract terms that will govern some future franchise agreement. The renewal fee is one of only a number of important terms in a franchise agreement. If ARCO is required to disclose a future franchise fee, by the same reasoning it should be required to disclose specific provisions concerning future rent, future royalties, future sales quotas, future hours of operation, and future inventory requirements. Defendant contends, and the court agrees, that the logical extension of plaintiffs' argument is that if ARCO is required to disclose the exact material terms that will be applicable upon first renewal, then it also must be required at the same time to disclose the exact terms that will apply upon a second, third or fourth renewal. That would require incredibly accurate reading of the crystal ball by a franchisor, and more likely than not would be impossible considering the volatility of the oil and gasoline industry.

Defendant also says there is another reason why Atlantic Richfield, or any other franchisor, should not be required to disclose future contract terms years in advance: the competitive nature of the market place simply does not permit prudent businesses to fix for some indefinite period the prices of their products, especially in the retail oil and gasoline business.

Plaintiffs' contention that the WAC requires the defendant, when first entering into a franchise agreement, to disclose that upon subsequent renewals franchisees will be required to pay a specific fee, or to disclose provisions concerning royalties and sales quotas, is not credible and is not supported by the plain language of the statute or the related administrative code provision. The more proper interpretation of WAC 460–80–310(17)(b) conforms with the Guidelines for Preparation of the Uniform Franchise Offering Circular, *supra.*

■ The court has carefully examined the UFOCs submitted by defendant as Exhibits A–E, and is convinced they comport with the statute and the guidelines. The UFOCs make it clear the franchises are not automatically renewable, and if renewed, the franchisee will be required to execute an agreement in accord with the company's current franchise policy. The current company policy requires a franchise fee of $20,000.

Plaintiffs are correct that all material facts are before the court and are undisputed. The only relevant and material facts regarding the renewal fee issue are the contents of the respective Uniform Offering Franchise Circulars received by each plaintiff before signing either their initial franchise agreement or renewal franchise agreement. Plaintiffs also are correct that all issues in this case are issues of law.

RCW 19.100.180(2)(i) does not provide for an automatic right to renew a franchise. Instead, the statute provides that a franchise arrangement is terminable at will provided that the franchisor meets the specific reimbursement requirements. Additionally, plaintiffs incorrectly interpret WAC 460–80–310. ARCO was not required to disclose the $20,000 franchise renewal fee pursuant to item 17(b) of WAC 460–80–315. Furthermore, Atlantic Richfield did not violate RCW 19.100, *et. seq.* by failing to disclose in a previous UFOC the amount of a future franchise fee, or by offering plaintiffs a new franchise agreement containing a fee requirement of $20,000.

There are no issues of material fact in dispute, either as to the plaintiffs' motion for partial summary judgment or the cross motion of defendant for partial summary

**974**

judgment. This case turns on an interpretation of the Franchise Investment Protection Act, RCW 19.100, *et seq.* Therefore, for the reasons stated above, the motion of defendant for partial summary judgment is **GRANTED,** and the motion of plaintiffs for partial summary judgment is **DENIED.** Judgment will be entered in favor of defendant finding that, as a matter of law, ARCO did not violate RCW 19.100, *et seq.* by failing to disclose in a previous UFOC the amount of the future franchise fee, or by offering plaintiffs a new franchise agreement containing a franchise fee requirement of $20,000.

The Clerk of the Court shall direct uncertified copies of this Order to counsel of record.