634 So.2d 277 (1994)
BALCOR PROPERTY MANAGEMENT, INC., an Illinois corporation authorized to do business in Florida, Appellant/Cross-Appellee,
v.
Gabriel AHRONOVITZ, Appellee/Cross-Appellant.
No. 93-0086.
District Court of Appeal of Florida, Fourth District.
March 30, 1994.
Rehearing Denied April 26, 1994.
*278 Robert R. Edwards and Robert L. Jennings, Jennings, Valancy & Edwards, P.A., Fort Lauderdale, for appellant/cross-appellee.
Bernard Berman, Fort Lauderdale, and Joseph C. Jacobs and Robert M. Ervin, Jr., Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, for appellee/cross-appellant.
STEVENSON, Judge.
This is an appeal and cross-appeal from a final judgment entered by the trial court pursuant to a jury verdict which found that appellant, Balcor Property Management Inc., ("Balcor") entered into a civil conspiracy resulting in a civil wrong or civil theft which caused damage to appellee, Gabriel Ahronovitz. We reverse.
The chronology of this unfortunate business episode is as follows. On February 3, 1989, Gabay Shimon ("Shimon") personally leased unfurnished commercial space on the first floor of the Interstate Plaza in Boca Raton from Balcor for use as a restaurant. The lease gave Shimon the right to assign his tenancy to G. Simon, Incorporated ("G. Simon") upon showing proof that the corporation had been duly organized and that Shimon was a principal/majority stockholder.
In April of 1989, appellee and Shimon, who had been close friends since serving together in the Israeli army many years earlier, began discussing the possibility of appellee investing in a restaurant. In June of 1989, appellee entered into an agreement with Shimon, Eli Mordehay (a friend of Shimon's), and G. Simon wherein appellee would invest $95,000, and Shimon and Eli Mordehay would each invest $75,000 in the corporation in exchange for equal shares of stock. The purpose of the corporation was to operate a restaurant. The men agreed that should any of them no longer wish to be involved in the corporation, his money would be returned.
Appellee became actively involved in the development of the restaurant at the Interstate Plaza. On a day to day basis, appellee supervised the construction, bought equipment and merchandise, and even personally participated in painting and other work that needed to be done. Balcor's representatives knew that appellee was an "owner" or "stockholder" of G. Simon. Although the lease was never assigned to G. Simon, rent payments were made to Balcor using corporate checks. The restaurant equipment was purchased with corporate funds.
The restaurant opened in October of 1989. At around this same time, appellee decided to withdraw his investment from the restaurant. Appellee believed that he was being taken advantage of and concluded that neither Mordehay nor Shimon had made their financial contributions to the company. Appellee requested that his money be returned but it was not; he hired an attorney and filed *279 suit in November of 1989. In February of 1990, appellee obtained a default against Shimon and G. Simon for $95,000 and rescission of his shareholders agreement.
In early 1990, things took a turn for the worse for the restaurant. The February 1990 and March 1990 rent payments were not made. Appellee went to the restaurant on March 26, 1990, and discovered that the doors were locked. Appellee met with representatives of Balcor and was unsuccessful in his attempts to convince Balcor to allow him to pay the lease arrearages so that he could keep the restaurant operating. Appellee told Balcor's representatives that the equipment in the restaurant was owned by the corporation.
On April 1, 1990, at Shimon's request, Balcor approved an assignment of the lease from Shimon to Ciro's Pizza Pomodoro of Knights-bridge London, Inc. Five days later, Shimon sold Ciro's the furnishings and equipment which had been used in the restaurant (an employee of Balcor notarized the bill of sale). Then Shimon disappeared. Final judgments were entered on the defaults against Shimon and G. Simon in January of 1991. This lawsuit followed.
We must determine whether Balcor may properly be held liable to appellee under the facts of this case and under the legal theories presented by appellee. Appellee has alleged, and the jury found, that Balcor conspired with Shimon to fraudulently convey all of the assets of G. Simon, Incorporated to Ciro's Pizza Pomodoro thus "stealing" appellee's means of recovery on his pending claims against the corporation. We conclude that the evidence did not establish Balcor's liability under the legal theories presented.
Appellee brought this action against Balcor alleging conspiracy to commit civil theft and civil theft pursuant to section 772.11, Florida Statutes (1989). Appellee states that the "gravamen" of his claim is that Balcor knew that appellee was
well on the way to obtaining a judgment against G. Simon for the return of his money [and] Balcor conspired with Shimon to, and in fact did, steal from G. Simon and fraudulently transfer to a third party the means by which [appellee] could have obtained the return of his money, thereby rendering worthless the judgment [appellee] eventually obtained against G. Simon.[1]
The general rule is that "the gist of a civil action for conspiracy is not conspiracy itself but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff." Berger v. Levin, 231 So.2d 875, 877 (3rd DCA 1970). For instance, in Buchanan v. Miami Herald Publishing Company, 206 So.2d 465 (3rd DCA 1968), modified on other grounds, 230 So.2d 9 (Fla. 1969), the court held that an allegation of conspiracy to commit malicious prosecution was properly dismissed where the underlying charge, malicious prosecution, was not actionable under the facts of that case. Here too, the underlying offense of civil theft must be actionable before the charge of civil conspiracy may be properly maintained.
At the trial below, there was evidence presented from which the jury could have concluded Ciro's would not have purchased the corporation's equipment if not for the encouragement and involvement of Balcor's representatives. Assuming that such enticement legally implicates Balcor in Shimon's wrongful actions, the question still remains  what interest did appellee have in the property stolen and what legally recognizable injury has he suffered as a result of this theft? To maintain a cause of action under the civil theft statute one must have been injured by the defendant's violation of one or more of the provisions of the criminal theft laws found in sections 812.012-037, Florida Statutes (1989). See § 772.11, Fla. Stat. (1989). This injury can only be established if it is shown that the victim has a legally recognized property interest in the items stolen. See Sussex Mutual Insurance Co. v. Gabor, 568 So.2d 1004 (Fla. 3rd DCA 1990).
In the instant case, appellee argues that Balcor stole the means with which appellee could satisfy his claims against the corporation. However, at the time the restaurant *280 equipment was sold it belonged to the corporation and was not appellee's property.[2] Nevertheless, appellee steadfastly maintains that he did not bring a shareholder's derivative action nor bring suit as a judgment creditor and that it was not his intention to bring such claims. But, except for his potential interest as a shareholder or possibly a judgment creditor, appellee has demonstrated no property interest in the equipment taken[3].
The mere expectation that the equipment sold to Ciro's could be used to satisfy a judgment that appellee would eventually obtain against the corporation represents a highly speculative harm to appellee at best. Furthermore, appellee confronts yet another insurmountable obstacle in proving his claim because such a vague, amorphous, and presently unrealized interest could hardly be considered "property" subject to theft within the meaning of the criminal theft statutes. Although property is defined in the statute as anything of value and includes "rights, privileges, interests and claims", the "owner" must be capable of having "an interest in the property upon which another person is not privileged to infringe without consent". §§ 812.012(3)(a) and 812.012(4), Fla. Stat. (1989). Appellee has shown neither a legally recognizable interest in the property nor quantifiable injury to himself and has presented no persuasive authority to support his position.
Because appellee could not sustain his claim for civil theft, appellee cannot prove that he was injured by any involvement by Balcor in a conspiracy to commit civil theft. We note that no other underlying civil wrong was alleged or proven. Therefore, we hold that the trial judge erred in failing to grant appellant's motion for directed verdict. The disposition of this issue makes all remaining points raised on appeal moot.
Reversed and remanded with directions that judgment be entered in favor of Balcor, the defendant below.
DELL, C.J., and POLEN, J., concur.
NOTES
[1] Appellee/Cross-Appellant's Cross-Reply Brief at 1.
[2] Indeed, the trial judge recognized this anomaly when he entered the final judgment on behalf of the corporation with appellee as trustee even though the corporation was not a party to the lawsuit. Both parties recognize and concede that this was error.
[3] Perhaps appellee recognized his `Catch-22' dilemma in pursuing either of these avenues of relief because at the time of the alleged theft, he had already obtained a default against the corporation and Shimon on his rescission suit but had not yet reduced the default to a judgment.