**ANTHONY DISTRIBUTORS, INC., and Anthony Distributing Company, Inc., Plaintiff-counterdefendants,**

v.

**MILLER BREWING COMPANY, Defendant-counterclaimant.**

No. 94–1176–CIV–17C.

United States District Court, M.D. Florida, Tampa Division.

Oct. 2, 1996.

Claude Hines Tison, Jr., Harold D. Oehler, Macfarlane, Ausley, Ferguson & McMullen, Tampa, FL, for Anthony Distributors, Inc. and Anthony Distributing Co., Inc.

A. Broaddus Livingston, Sylvia H. Walbolt, Matthew D. Allen, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa,

FL, Dwight J. Davis, King & Spalding, Atlanta, GA, Jill H. Bowman, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, FL, Michael W. Youtt, L. Joseph Loveland, Donald L. Harvey, King & Spalding, Houston, TX, for Miller Brewing Co.

Ronald Keith Cacciatore, Ronald K. Cacciatore, P.A., Tampa, FL, for Doug Wood and Terry Burkardt.

William F. Jung, Black & Jung, P.A., Tampa, FL, for Thomas Blair, Mark Anderson, Thomas Rueckl, Rex Johnson, Donald Luchka and James Dunbar.

David Barnett Weinstein, Williams, Reed, Weinstein, Schifino & Mangione, P.A., Tampa, FL, for Kenneth Amato.

*ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, PLAINTIFFS' MOTION FOR CLARIFICATION, AND PLAINTIFFS' OBJECTIONS TO DISCOVERY ORDERS*

KOVACHEVICH, Chief Judge.

This cause comes before the Court on three (3) motions and two (2) objections, their respective responses, and related documents (not all related documents are listed):

1. Defendant MILLER BREWING COMPANY's (hereinafter Miller) Motion for Summary Judgment (Docket No. 190), Memorandum in Support (Docket No. 214), and Plaintiffs ANTHONY DISTRIBUTORS, INC.'s, and ANTHONY DISTRIBUTING COMPANY, INC.'s (hereinafter and collectively Anthony) Response (Docket No. 238);

2. Anthony's Motion for Partial Summary Judgment (Docket No. 200), Memorandum in Support (Docket No. 201), and Miller's Response (Docket No. 226);

3. Anthony's Motion for Clarification of June 19, 1996, Scheduling Order and Incorporated Memorandum of Law (Docket No. 190), and Miller's Response (Docket No. 220);

4. Anthony's Objections to Magistrate Judge Jenkins' Discovery Orders Entered August 12, 1996 (Docket No. 221), and Miller's Response (Docket No. 240); and

5. Anthony's Objections to Magistrate Judge Jenkins' Discovery Orders Entered August 7, 1996 (Docket No. 218).

## FACTS

To provide a factual background for this case, the Court reincorporates one of its prior Orders by specific reference. *Anthony Distributors, Inc. v. Miller Brewing Co.*, 882 F.Supp. 1024 (M.D.Fla.1995). The relevant facts are as follows:

On July 26, 1994, [Anthony] filed a … complaint against [Miller] alleging … breach of contract, and tort claims arising out of [Anthony's] status as exclusive directors of [Miller's] products in Pinellas and Hillsborough Counties [of Florida]. …

Ill will between the parties began in 1991, when market fluctuations caused consumers in [Anthony's] distribution areas to become more price conscious. [Anthony's] historically satisfactory profit margin was affected as local consumers shifted to below-premium and budget beers. [Miller] did not reduce the retail price of these below-premium and budget beers to match competitors' prices, which resulted in a loss of [Anthony's] market share.

In 1992, [Miller] devised a plan to make it more competitive with its rival [Anheuser–Busch, Inc.] by increasing its distribution areas, which would result in having fewer distributors. [Miller] negotiated with [Anthony] in a failed attempt to buy back [Anthony's] distribution rights. [Miller] then implemented a [marketing] plan known as "Feet on the Street". … [Anthony] alleges that "Feet on the Street" was actually designed to interfere with [Anthony's] relationships with their customers, damage [Anthony's] reputation, and further impair [Anthony's] profit margin. To facilitate the claimed adversarial goal of "Feet on the Street," [Miller] allegedly committed criminal acts. [Anthony] claims that [Miller's] conduct … was tortious, criminal, and a breach of contract.

*Id.* at 1028–29 (as altered).

## MILLER'S MOTION FOR SUMMARY JUDGMENT

The Court will grant a motion for summary judgment "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A complete discussion of the summary judgment standard can be found in *Ali v. City of Clearwater,* 915 F.Supp. 1231, 1237–38 (M.D.Fla.1996), which the Court incorporates by specific reference herein.

### Count II: Tortious Interference with a Business Relationship.

In this count, Anthony alleges that Miller intentionally and unjustifiably interfered with Anthony's business relationships with their customers. As the Court previously concluded, this allegation validly states a tort claim. 882 F.Supp. at 1030–31. Presently, at the summary judgment stage, the issue is whether Anthony has advanced sufficient record evidence of every element of this tort. The Court concludes that Anthony has not, as discussed below.

As recently stated by the Supreme Court of Florida, "[t]he elements of tortious interference with a business relationship are: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc., v. Georgetown Manor, Inc.,* 647 So.2d 812, 814 (Fla.1994) (internal quotations, alterations, and citations omitted). In the instant case, Miller primarily disputes elements three (3), interference, and four (4), damages.

■ To prove interference, Anthony must show that Miller's actions induced or caused a breach or termination of a business relationship or expectancy. *Smith v. Ocean State Bank,* 335 So.2d 641, 643 (Fla. 1st DCA 1976). The interference must be both intentional and unjustified. *Weight–Rite Golf Corp. v. United States Golf Association,* 766 F.Supp. 1104, 1112 (M.D.Fla.1991), *aff'd,* 953 F.2d 651 (11th Cir.1992). Furthermore, damages to Anthony must "reasonably flow[ ]" from Miller' interference. *Ethan Allen,* 647 So.2d at 815.

As to interference, Anthony argues that their relationships need not be terminated to constitute interference. Anthony submits Exhibits K and OOO as record evidence of interference. (Docket No. 238, pp. 24–25). However, even if termination is required, Anthony argues that Exhibits NNN, G, and H support such a finding. (Docket No. 22–24).

■ Anthony's record evidence does not support their claim. First, based on a review of relevant case law, of which the parties provided little, this Court holds that either "breach" or "termination" of a business relationship or expectancy is necessary to establish "interference." *Ocean State,* 335 So.2d at 643; discussed *supra; see also Ethan Allen,* 647 So.2d at 814 (involving a furniture manufacturer that tortiously interfered with a dealer's relationship with its customers, in that the manufacturer's actions caused the dealer's customers "to cancel their orders and demand refunds"); *Greenberg, M.D., v. Mount Sinai Medical Center,* 629 So.2d 252, 254–55 (Fla. 3d DCA 1993) (involving a chief doctor alleged to have tortiously interfered with a subordinate doctors' patients, in that the chief influenced such patients to see him instead of subordinates); *West v. Troelstrup,* 367 So.2d 253, 254–55 (Fla. 1st DCA 1979) (involving an executive director alleged to have tortiously interfered with an employee's job, but affirming the claim's dismissal because the employee failed to allege that the executive director "influenced or induced anyone to terminate" the employee). To hold otherwise would unduly burden competition and free enterprise. *See Heavener, Ogier Services, Inc. v. R.W. Florida Region, Inc.,* 418 So.2d 1074, 1076–77 (Fla. 5th DCA 1982) (describing, in the context of a claim for tortious interference, the delicate balance between: (1) safeguarding established and legitimate economic interests and (2) unduly burdening competition and free enterprise).

Neither Exhibits NNN (filed *in camera*), G, nor H contain sufficient record evidence of breach or termination. The charts, numbers, and opinions in Exhibit NNN fail to support

Anthony's proposition that, after the "Feet on the Street" program disbanded, one of Anthony's customers demanded bribes from Anthony and terminated its relationship with Anthony based upon Anthony's refusal. (Docket No. 238, p. 23). Exhibit G, the deposition of Michael Lee Casselman, apparently an employee of Anthony's,[1] is full of inadmissible hearsay within hearsay, Fed. R.Evid. 805. That defect aside, the deponent clearly states that he does not know of "any customer ... lost as a result of the acts of the Feet on the Street personnel." (pp. 323–24). Finally, like the deponent in Exhibit G, the deponent in Exhibit H fails to assert any personal knowledge of a customer lost due to Miller's actions.

Even if breach or termination is not required to prove interference, Anthony still fails to present sufficient record evidence of interference. Exhibit K, the deposition of Gerald Suarez, another apparent employee of Anthony, fails to support a finding of interference. In fact, the deponent stated that he personally reduced the "ridiculous" amount of beer requested by Miller for displays "[u]sually every time...." (pp. 34, 37–38). Similarly, Exhibit OOO does not contain any evidence of interference. At best, it supports a finding that Miller did not approve of how Anthony handled their accounts. (E.g., p. 32). The Court notes that, not only does the testimony contained in that exhibit fail to support a finding of interference, but it, along with other record evidence, also fails to support a finding of that the interference was "intentional" and "unjustified."

■ As to damages, Anthony specifically submits Exhibits E, H, and J. None of these exhibits support a finding of any damage flowing from Miller's alleged interference. In Exhibit E, Salvatore Anthony Italiano, half-owner of Anthony, testified that Anthony experienced their "highest profit year" of the 1990's at the same time that the "Feet on the Street" program was in place. (p. 94). Furthermore, Exhibit H only supports a finding that it was *Anthony's* marketing policy that

caused an increase in their old beer returns, not Miller's. (E.g., pp. 478–81). Similarly, Exhibit J corroborates Exhibit H, in that the deponent admits that Miller lacks the authority over Anthony to demand an increase in the amount of beer distributed to certain locations. (E.g., p. 287). It also contains no testimony to support Anthony's assertion that customers stopped buying from Anthony because of Miller's actions. Thus, there is clearly no record evidence of damages, whether quantified or not.

In summary, Anthony has failed to raise a genuine issue of material fact on any of the elements of the cause of action stated in Count II, tortious interference. At best, the record evidence suggests that Miller's actions were "designed to protect or promote [its] own financial and contractual interests," which are "not actionable" under Florida law. *Captran Creditors Trust v. North American Title Insurance Agency* (In re Captran Creditors Trust), 116 B.R. 845, 853–54 (Bankr. M.D.Fla.1990). Therefore, the Court grants summary judgment in favor of Miller with respect to Count II.

*Count III: Breach of Contract.*

In this count, Anthony alleges that Miller breached: (1) its obligation of good faith in the performance of the distributorship agreements (Docket No. 205, ¶ 50); (2) promises contained in paragraphs 7, 8, and 18(f) of the distributorship agreement (Docket No. 205, ¶ 51); and (3) a separate, oral agreement to assign Molson Ice beer distribution rights to Anthony in consideration for their financial and other investment in the introduction of Molson products (Docket No. 205, ¶ 52). These allegations were held sufficient to state a claim for breach of contract. 882 F.Supp. at 1029. Presently, however, the Court must decide whether Anthony has advanced sufficient record evidence to support this count. The Court concludes that Anthony has not met this burden, and will discuss Anthony's allegations in reverse order.

---

1. The only testimony in Exhibit G regarding the deponent's connection with Anthony is at p. 280, lines 8–10 ("Q ... Who at Anthony would have authorized the beer? A. It would be me or the branch manager."). This type of ambiguity is common throughout all of Anthony's exhibits. To better aid the Court, Anthony should have included those portions of depositions that specifically state, on the record, who the deponent is and how he is connected to the parties.

The elements for a breach of contract action are: "the existence of a contract, a breach thereof, and damages." *Miller v. Nifakos*, 655 So.2d 192, 193 (Fla. 4th DCA 1995) (per curiam). With respect to breach of the Molson agreement, Anthony fails to point to any record evidence of an "agreement." In fact, Salvatore Anthony Italiano testified that Anthony was not entitled to rights to Molson under the distributorship, or any other, agreement. (Exhibit E, p. 440). Even if the evidence somehow supported a finding of an agreement, the Court agrees with Miller that any separate, oral distributorship agreement would be unenforceable under Florida's Statute of Frauds, *Fla.Stat.* § 725.01 (1995). *All Brand Importers, Inc., v. Tampa Crown Distributors, Inc.*, 864 F.2d 748, 749 (11th Cir.1989) (holding that Section 725.01 "bars enforcement of an oral contract that was intended by [a distributor and its customer] to last longer than a year, even though the contract could have been terminated for cause within a year"). The Court rejects Anthony's bare assertion that they have partially performed. Anthony has failed to point out any record evidence to show that they have provided any consideration to Miller for the rights to Molson, namely "financial and other investment in the introduction of Molson products." (Third Amended Complaint, Docket No. 205, ¶ 52).

Regarding breaches of paragraphs 7, 8, and 18(f) of the distributorship agreement, Anthony also fails to support such allegations with record evidence. Paragraph 7, entitled "Miller's Termination Rights," does not support a cause of action for Anthony. As the evidence indisputably reveals, Miller never initiated termination proceedings until after Anthony commenced this suit. Thus, neither it nor paragraph 8 ("Post-termination Provisions") apply to support Anthony's Count III. Furthermore, Anthony fails to advance any argument to support their allegation that Miller breached paragraph 18(f). As such, the Court agrees with Miller that summary judgment is warranted on Anthony's claim for breach of paragraph 18(f).

In their memorandum, Anthony states that "Count III does not allege any classic breach of contract but a breach of the duty of good faith." (Docket No. 238, p. 28). Thus, a cause of action for "breach of good faith" appears to be the crux of the instant count. As this Court previously noted, "[a] cause of action for a breach of the duty of good faith and fair dealing has been recognized by the courts." 882 F.Supp. at 1031 (citing *Scheck v. Burger King Corp.*, 798 F.Supp. 692 (S.D.Fla.1992)). However, "a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached." *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1439 (S.D.Fla.1996). The *Barnes* court also noted that its holding was consistent with the Eleventh Circuit's position in *Alan's of Atlanta, Inc., v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir.1990) (holding that, under Georgia law, the duty of good faith cannot "be breached apart from" an express contractual term). Accordingly, this Court granted Anthony leave to amend their complaint "to include the breaches of specific contract provisions in [Count III]." 882 F.Supp. at 1031.

Because, as discussed *supra*, Anthony fails to present sufficient record evidence of Miller's breach of any express contractual provision, i.e. paragraphs 7, 8, and 18(f), this Court grants summary judgment in favor of Miller with regard to Count III. The Court adopts the Southern District of Florida's well-reasoned conclusion that "the implied covenant of good faith and fair dealing is not actionable absent a breach of the contract's express terms." *Burger King Corp. v. Holder*, 844 F.Supp. 1528, 1530 (S.D.Fla.1993).

Even if Anthony is correct in their bare assertion that breach of good faith is independent of breach of contract, they fail to advance any record evidence that "Miller has generated fraudulent evidence to use in support of a termination." (Docket No. 238, p. 29). Indeed, Anthony does not designate any *specific* facts in any affidavit, deposition, answers to interrogatories, or admissions on file to establish this alleged fabrication. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (detailing the summary judgment burden of

the non-moving party who has the burden of proof at trial).

Nonetheless, after due consideration of all the record evidence, this Court concludes that there is no genuine issue of fabrication. For example, Lawrence Boylan, apparently a Miller employee involved with the "Feet on the Street" marketing program, merely testified that he was instructed by Miller's agents to document everything Anthony was "doing wrong or screwing up." (Exhibit RRR, p. 53). Indeed, there is record evidence that Miller wanted a new distributor in the Tampa Bay area. (*E.g., id.* at 59, 65). However, an inter-office correspondence at Miller reveals many legitimate business reasons for this desire. (Exhibit SSS, filed *in camera* ). At best, this evidence supports an inference that Miller watched Anthony closely, not fabricated anything. Anthony could not plausibly convince the Court that Miller acted in bad faith by paying close attention to Anthony's performance. Therefore, the Court grants summary judgment in favor of Miller with regard to Count III, regardless of whether breach of good faith is independent of breach of contract.

*Count VII: Civil Theft.*

As previously determined by this Court, Anthony's civil theft claim is based solely on Miller's alleged intervention of Anthony's sale negotiations with their customers. 882 F.Supp. at 1033. Anthony claims that Miller "pressured" Anthony into selling excessive quantities of beer to their customers, only to result in Anthony's having to buy back old beer that did not sell before its expiration date. (Docket No. 238, pp. 31–32). While this count may validly state a claim for civil theft, 882 F.Supp. at 1033, it is not supported by sufficient record evidence at this, the summary judgment, stage.

In Florida, "[a]ny person who proves by clear and convincing evidence that he has been injured in any fashion by reason of any violation of [the Florida Anti–Fencing Act, *Fla.Stat.* § 812.012–.037] has a cause. of action for threefold the actual damages sustained...." *Fla.Stat.* § 772.11 (1995). This statute provides a civil remedy for theft, which occurs when one "knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) [d]eprive the other person of a right to the property or the benefit therefrom [or] (b) [a]ppropriate the property to his own use or to the use of any person not entitled thereto." *Id.* § 812.014(1).[2]

 Readily apparent from the face of the statute, "felonious intent to steal on the part of the defendant" is a "necessary element of proof." *Westinghouse Electric Corp. v. Shuler Brothers, Inc.,* 590 So.2d 986, 988 (Fla. 1st DCA 1991), *rev. denied,* 599 So.2d 1279 (Fla.1992). Similarly, it is essential that the victim have "a legally recognized property interest in the items stolen." *Balcor Property Management, Inc., v. Ahronovitz,* 634 So.2d 277, 279 (Fla. 4th DCA 1994). All the elements of civil theft must be proven by clear and convincing evidence, which is "an intermediate standard, between the preponderance of the evidence standard and the criminal beyond a reasonable doubt standard." *Small Business Administration v. Echevarria,* 864 F.Supp. 1254, 1264–65 (S.D.Fla.1994). *But cf. Bufman Organization v. FDIC,* 82 F.3d 1020, 1028 (11th Cir. 1996) (stating that "Florida law creates a civil cause of action for violations of certain criminal theft statutes that are proven by a preponderance of the evidence"). Some Florida courts have described this standard as follows:

> Clear and convincing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion

---

**2.** Anthony's third amended complaint (Docket No. 205, ¶ 75) alleges that Miller violated *Fla. Stat.* § 812.015(1) instead of Section 812.014(1). This must be a scrivener's error, because Section 812.015(1) merely defines words used in the retail and farm theft statute and provides no civil remedy. Furthermore, Anthony quotes Section 812.014(1) in their civil theft discussion. *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 29. (Docket No. 238). Similarly, this Court's use of the word "conversion" in its prior Order is erroneous to the extent that it differs from "theft." *See* 882 F.Supp. at 1032–33.

as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established. . . . [The clear and convincing evidence standard] seems to preclude evidence that is ambiguous.

*Westinghouse,* 590 So.2d at 988 (internal quotations, citations, and alterations omitted).

Given their stringent standard of proof at trial, Anthony must advance record evidence of all the elements of civil theft, and this evidence must be such that a reasonable jury might find that the elements "had been shown with convincing clarity." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986) (requiring a defamation plaintiff who had to prove "actual malice" by clear and convincing evidence at trial to oppose a motion for summary judgment with record evidence "such that a reasonable jury might find that actual malice had been shown with convincing clarity"). Anthony fails to meet this burden,[3] in that they have not advanced sufficient record evidence of "stealing" (the act), "felonious intent to steal" (the mens rea), or damages.

■ First, there is insufficient record evidence that Miller stole any of Anthony's property. Anthony asserts that, by virtue of its power, Miller "attempted to take Anthony's business by fraudulently generating a case for termination." However, as discussed above, the record evidence does not support an inference that Miller fabricated evidence or otherwise committed fraud. (*E.g.,* Exhibit RRR, p. 53, discussed *supra*). As to Anthony's contention that Miller "pressured" Anthony into selling excessive quantities of beer to their customers, the record evidence fails to support an inference that Miller knew that its requested quantities were grossly excessive. Rather, the evidence indicates that such requests were only made a "couple" of times. (Exhibit K, pp. 37–38). Furthermore, the evidence indicates that Anthony's employees handled this "pressure" by unilaterally adjusting the quantities

of beer to a more comfortable level. (Exhibit K, p. 34).

The Court also concludes that Anthony's "pressure" theory lacks evidentiary support. Miller lacks authority to demand any specific quantity of distribution to Anthony's customers. (*E.g.,* Exhibit J, p. 287). Anthony's employees unilaterally lowered Miller's "ridiculous" orders to a "safe" level. (*E.g.,* Exhibit K, p. 34). The consequences to Anthony of ignoring Miller's requests appear to be, at most, "an unsatisfactory rating, which would result in a probation." (Exhibit J, p. 319, lines 20–21). There is no showing that Anthony was ever placed on probation. Even if Anthony was placed on probation, the record evidence indicates that it is "very possible" to do business with Miller, even if a distributor has a bad relationship with Miller. (Exhibit E, p. 640). Thus, the Court cannot find any record evidence of "pressure," the method by which Miller allegedly stole property from Anthony.

■ Second, Anthony does not point out any evidence that would support a finding of "felonious intent to steal." Indeed, they fail to allege this element in their third amended complaint. (*See* Docket No. 205, pp. 21–22, ¶¶ 74–77). That defect aside, the record evidence, at best, supports an finding that Miller wanted to replace Anthony with another distributor. (*E.g.,* Exhibit RRR, p. 65, lines 20–21). Indeed, there is evidence that Miller indicated it was "going to force Anthony out." (*Id.* at p. 59, lines 1–2). However, these facts are too ambiguous and imprecise to prove "felonious intent to steal" by clear and convincing evidence, even circumstantially.

■ Finally, the record contains no evidence of damages caused by Miller's alleged theft. While Salvatore Anthony Italiano testified that Anthony hired three (3) specialists to audit their accounts for old beer, the record only supports a finding that it was *Anthony's* marketing policy that caused an increase in their old beer returns, not Miller's. (*E.g.,* Exhibit H, pp. 478–81). Furthermore, damages in the context of civil

3. Even if Anthony were not held to the higher summary judgment standard, they fail to estab-

lish genuine issues of material fact with regard to all the elements of civil theft.

theft normally correspond to the value of the property stolen by the defendant. *See, e.g., Nova Flight Center, Inc., v. Viega,* 554 So.2d 626 (Fla. 5th DCA 1989) (involving a sublessee who rewired a sublessor's building in order to receive electricity at the sublessor's expense). In the instant case, no reasonable jury could be clearly convinced that Miller appropriated the value of hiring Anthony's three (3) old beer specialists for its own use. The Court grants summary judgment in favor of Miller with regard to Count VII, civil theft.

### Count VIII: Defamation.

In this count, Anthony alleges that, "pursuant to Miller's express direction or approval," Miller's agents

[M]ade false and defamatory statements concerning [Anthony] to [Anthony's] customers and competitors and to other persons, including statements that [Anthony] performed poorly, for the purpose of impairing the confidence of [Anthony's] customers in [Anthony's] ability to serve them and impairing [Anthony's] ability to compete. Such statements ... includ[e] but [are] not limited to statements made in approximately March 1993 by Miller representatives Doug Wood and Larry Boylan to Kenneth Stoops, manager of Whiskey Joe's, a customer of [Anthony's], that Miller was unhappy with Anthony's handling of its key accounts, and that Miller desired to replace Anthony as a Miller distributor in Anthony's territory.

(Docket No. 205, p. 12, ¶ 34) (capitalization altered). Accordingly, the Court held that this allegation "state[s] a claim for defamation." 882 F.Supp. at 1033. At this juncture, the issues are: (1) whether Anthony has advanced sufficient record evidence of all the elements of defamation and (2) whether Miller is entitled to summary judgment as a matter of law. The Court concludes that Miller is entitled to summary judgment, as discussed below.

■■■ Where, as here, the defendant is not a public figure, the elements of defamation are: (1) a false and (2) defamatory (3) statement of fact (4) concerning another, (5) published to a third party (6) negligently.

*Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan,* 629 So.2d 113, 115 (Fla.1993) (Shaw, J., dissenting) (quoting the Restatement (Second) of Torts, § 558 (1977)); *Miami Herald Publishing Co. v. Ane,* 458 So.2d 239, 242 (Fla. 1984); *Smith v. Taylor County Publishing Co.,* 443 So.2d 1042, 1049 (Fla. 1st DCA 1983). The plaintiff must also prove damages, unless the defendant is liable for slander *per se,* in which case "at least nominal damages" are presumed. *Wagner,* 629 So.2d at 116.

■■■ In the present case, the only record evidence of the alleged statement and publication is the deposition of Kenneth Stoops, the manager of one of Anthony's customers. (Exhibit OOO). In this deposition, the following pertinent testimony was elicited by counsel for Anthony:

Q. ... Did either [Doug Wood or Larry Boylan, Miller's representatives with regard to its "Feet on the Street" marketing program] ever say anything to indicate how Miller viewed Anthony as a Miller distributor?

[Counsel for Miller]: Objection. Leading.

A. Just as far as a generality, that they were very upset, did not like the way Anthony was handling their accounts, poor sales, whatever range, and it was their desire if they could find another distributor other than Anthony, if that were a possibility.

Q. Now, who was saying this?

A. Larry Boylan.

Q. Okay. And who was he saying it to?

A. Me.

Q. Okay. Did he say where he had learned it from?

A. I'm assuming from Miller Brewing Company because that's who he had his contacts with.

Q. Did you ever hear [Doug Wood] make a statement about Miller wanting to have somebody else as a distributor?

[Counsel for Miller]: Objection. Leading.

A. Just in confirming the fact that Miller was not happy with the job that Anthony was doing, but no specifics.

\* \* \* \* \* \*

Q. Did this kind of conversation happen on one occasion or on more than one occasion?

[Counsel for Miller]: Objection. Leading.

A. Couple occasions.

(Exhibit OOO, p. 32, lines 14–25; p. 33, lines 1–10, 16–19). Thus, the challenged statement before the Court can be reduced to the following oral expressions: (1) Miller was very upset, (2) Miller did not like how Anthony handled accounts, (3) Anthony had poor sales on whatever range, and (4) Miller desired to replace Anthony with another distributor, if possible. The record also reveals that this statement was a "general" one, made a couple of times, by Miller's representatives, namely Larry Boylan,[4] to one of Anthony's customers. Thus, this record evidence, as quoted above, would support a finding that Miller's representatives "published" a statement that "concerned another," and leads this Court to conclude, as a matter of law, that said statement is one of "mixed opinion and fact," which is just as actionable as a pure statement of fact. *Florida Medical Center, Inc. v. New York Post Co.*, 568 So.2d 454, 457 (Fla. 4th DCA 1990) (stating that whether an alleged defamatory statement is a non-actionable expression of pure opinion or an actionable expression of pure fact or mixed opinion and fact is a question of law for the court), *rev. denied*, 581 So.2d 1309 (Fla.1991).

 While these three (3) elements of defamation have factual and/or legal support, the elements of "falsity," and "defamatory" do not. Regarding "falsity," the Court previously determined that the record establishes that Miller, in fact, wanted to replace Anthony. (*E.g.*, Exhibit RRR, p. 65, lines 20–21; discussed *supra*). Also, Anthony does not present any record evidence that Miller was anything but "upset" with Anthony. Finally, the deposition of the main publisher, Larry

Boylan, supports a finding that Miller believed Anthony was "doing things wrong" with their accounts, (Exhibit RRR, p. 71, lines 9–10), and there is no record evidence to the contrary. The Court also notes that, since there is no genuine issue with regard to the truth of this information, then Miller's representatives could not have been negligent in making these expressions.

 Therefore, the only portion of the challenged statement that is arguably false pertains to Anthony's "poor sales." The Court concludes, as a matter of law, that this expression is not slanderous *per se* or otherwise defamatory. First, the "poor sales" expression is not slanderous *per se*. Slander *per se* is a question of law for the Court, and exists "[w]here a publication is false and not privileged, and causes injury to a person in his business or trade...." *Auld v. Holly*, 418 So.2d 1020, 1027 (Fla. 4th DCA 1982), *quashed on other grounds*, 450 So.2d 217 (Fla.1984). In the present case, Anthony fails to point out any record evidence of an injury caused by this statement. In fact, there is nothing in Kenneth Stoops' deposition to suggest that Anthony suffered an injury to their business or reputation. (Exhibit OOO). Furthermore, when discussing Anthony's tortious interference claim, this Court noted that Anthony experienced their "highest profit year" of the 1990's at the same time that the Feet on the Street program was in place. (Exhibit E, p. 94).

 Second, the Court concludes, as a matter of law, that the expression, in context, is not defamatory. "Under Florida law, words are defamatory when they charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Seropian v. Forman*, 652 So.2d 490, 495 (Fla. 4th DCA 1995); *accord Keller v. Miami Herald Publishing Co.*, 778 F.2d 711, 716 (11th Cir.1985). At the summary judgment stage, the Court must determine whether the challenged statement is reasonably capable of a defamatory meaning. *Jones v. American Broad-*

---

4. The Court also concludes that Anthony has not advanced sufficient record evidence to establish that Larry Boylan and Doug Wood made the statements "pursuant to Miller's express direction or approval," as alleged in the third amended complaint.

*casting Co.*, 694 F.Supp. 1542, 1548 (M.D.Fla. 1988), *aff'd*, 961 F.2d 1546 (11th Cir.1992), *cert. denied*, 506 U.S. 1051, 113 S.Ct. 971, 122 L.Ed.2d 126 (1993).

The "poor sales" expression is not reasonably capable of a defamatory meaning, in that it appears to be nothing more than a legitimate business statement. The expression was made by two (2) marketing representatives from Miller. It is only natural for such persons to comment on the performance of a key Miller distributor. Obviously, Miller is in the business of selling beer and has every right to "reasonabl[y] challenge" the performance of its distributors. *See Summers v. W.T. Grant Co.*, 178 F.2d 916, 917 (5th Cir.1950). Furthermore, the adjective "poor" is a mellow one and is certainly not capable of charging Anthony with an infamous crime or subjecting them to hatred, distrust, ridicule, or contempt. Finally, Anthony fails to explain to the Court how the words "poor sales" are any more defamatory than the words "blackmail," "influence peddling," or "fraud." *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 14, 90 S.Ct. 1537, 1541–42, 26 L.Ed.2d 6 (1970) (concluding that the word "blackmail" in context was not defamatory); *Seropian v. Forman*, 652 So.2d 490, 495 (Fla. 4th DCA 1995) (concluding that the words "influence peddling" in context were not defamatory); *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F.Supp. 917 (M.D.Fla.1996) (concluding that the word "fraud" in context was not defamatory).

As to damages, another essential element of defamation, Anthony fails to advance sufficient record evidence of them. The Court incorporates by reference its discussion of damages with regard to tortious interference and previous portions of this section regarding slander *per se*. Therefore, the Court grants summary judgment in favor of Miller with regard to Count VIII, defamation.

5. Even if Anthony were not held to the higher summary judgment standard, they still fail to raise genuine issues of material fact on all the elements.

*Count XIII: Florida RICO.*

In the final surviving count of their complaint, Anthony alleges a cause of action under Florida's RICO statute, *Fla.Stat.* § 772.104 (1995). That statute reads, in pertinent part:

Any person who proves by clear and convincing evidence that he has been injured by reason of any violation of the provisions of [Section] 772.103 shall have a cause of action for threefold the actual damages sustained....

*Id.* Anthony alleges that Miller violated two (2) of the four (4) provisions listed in the referenced statute, Section 772.103 (1995). These provisions read, in pertinent part:

It is unlawful for any person:

 \* \* \* \* \* \*

(2) Through a pattern of criminal activity ..., to acquire or maintain, directly or indirectly, any interest in or control of any enterprise....

 \* \* \* \* \* \*

(4) To conspire or endeavor to violate ... subsection (2)....

*Id.* Therefore, at trial, Anthony must prove, by clear and convincing evidence, that Miller endeavored, conspired, or actually: (1) acquired or maintained (2) an interest in, or control of, (3) an enterprise through a (4) pattern of (5) criminal activity, which (6) injured Anthony. At this, the summary judgment stage, Anthony must advance record evidence of all these elements such that a reasonable jury might find that the elements "had been shown with convincing clarity." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986), discussed *supra* with the Court's analysis of tortious interference. The Court concludes that Anthony fails to meet their summary judgment burden on one (1) of these six (6) elements.[5]

The Court finds record evidence to support Anthony's allegation that Miller and its "Feet on the Street" program each constitute an "enterprise."[6] Similarly, the Court finds

6. On the other hand, the Court concludes, as a matter of law, that the partnership, joint ventures, associations, and other fiduciary relationships alleged in paragraphs 55, 56, 60, 84–87 and 91 of the third amended complaint (Docket

genuine issue of fact regarding "pattern" and "criminal activity." However, there is no issue of fact with regard to "injury."

Under the state RICO statute, "pattern" is defined, in pertinent part, as "engaging in at least two incidents of criminal activity that , . . . are interrelated by distinguishing characteristics and are not isolated." *Fla.Stat.* § 772.102(4) (1995). Thus, the threshold inquiry is whether Miller has engaged in "criminal activity."

For purposes of RICO, Florida law defines "criminal activity" as "to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit" any of the state crimes enumerated in Section 772.102(1)(a)–(b) of the Florida Statutes. *Id.* Anthony alleges that Miller committed four (4) of these crimes: (1) theft, in violation of *Fla.Stat.* § 812; (2) bribery, in violation of the Florida Beverage Law, *Fla. Stat.* §§ 561–568; (3) fraud, in violation of *Fla.Stat.* § 817; and (4) witness tampering, in violation of *Fla.Stat.* § 914 and 18 U.S.C. §§ 1512–1513.

■ The Court concludes that there is insufficient record evidence of three (3) of these crimes, "theft," "fraud," and "witness tampering." As to theft, *Fla.Stat.* § 812, the Court reincorporates its analysis with regard to Count VII. As to fraud, Anthony concedes that it is "in essence the same thing" as theft and otherwise fails to distinguish these two (2) crimes. (Docket No. 238, p. 34). Therefore, the Court similarly concludes that there is insufficient evidence to support a finding of fraud, generally, or "gross fraud and cheat," specifically.

As to witness tampering and retaliation, Anthony's allegation regarding 18 U.S.C. §§ 1512–13 is irrelevant to their Florida RICO action, in that said federal statute is not listed in Section 772.102(1)(a)–(b). With regard to *Fla.Stat.* § 914.22 and .23, there is insufficient record evidence to establish those crimes. Indeed, Anthony's relies on Charles

Teal's "repeatedly expressed belief" and Harry Purnell's "plainly expressed opinion" to prove that Miller retaliated against Anthony by revoking its rights to Miller. However, no reasonable jury could be clearly convinced that Miller committed these crimes based upon such speculative, incompetent expressions. *See* Fed.R.Evid. 602 (rendering inadmissible testimony outside a witness' personal knowledge), 701 (rendering inadmissible unhelpful opinions by lay witness). Furthermore, neither Teal nor Purnell testify in the proper form. *See* 28 U.S.C. § 1746 (unsworn declarations under penalty of perjury may be submitted in lieu of affidavits); Fed.R.Evid. 56(c) (requiring the non-moving party with the burden of proof at trial to advance "depositions, answers to interrogatories, . . . admissions on file" and/or "affidavits" to oppose summary judgment).

The only arguable "criminal activity" is that of bribery under the Florida Beverage Law, *Fla.Stat.* § 561.42(1), as enforced through *Fla.Stat.* § 562.45(1) (1995). In their motion for partial summary judgment, Anthony points to sufficient record evidence of not only "criminal activity," but also a "pattern" [7] of it. (*See* Docket No. 201). The depositions attached to Anthony's motion support these elements of Florida RICO, irrespective of Doug Wood's assertion of his Fifth Amendment privilege against self-incrimination.

Although a reasonable jury could be clearly convinced that Miller engaged in a "pattern" of "criminal activity," this evidence is not so "precise and explicit" as to permit this Court to conclude, as a matter of law, that no reasonable jury could find for Miller on these issues of fact. *See Westinghouse Electric Corp. v. Shuler Brothers, Inc.,* 590 So.2d 986, 988 (Fla. 1st DCA 1991) (defining "clear and convincing evidence"), *rev. denied,* 599 So.2d 1279 (Fla.1992), discussed *supra* with tor-

---

No. 205) are not "enterprises," since the counts relating to those paragraphs have been previously dismissed by this Court.

**7.** The Court rejects Miller's argument that there can be no "pattern," in that the alleged criminal activity was directed at only one of the plaintiffs. There is sufficient record evidence to establish "pattern" of "criminal activity" as to both plaintiffs.

tious interference. Therefore, the Court denies Anthony's motion for partial summary judgment with respect to Count XIII, their Florida RICO cause of action.

■ Despite evidence of Miller's bribery, however, Anthony fails to advance sufficient evidence of any "injury" Anthony received "by reason of" Miller's bribery. *Fla.Stat.* § 772.104. As this Court discussed with respect to tortious interference (Count II), there is no record evidence of any revenues, customers, or profits lost "by reason of" Miller's alleged payments to Anthony's customers. Indeed, as discussed in conjunction with Count II, the evidence points only to the contrary. Additionally, Anthony fails to *specifically* locate for the Court those portions of affidavits, depositions, answers to interrogatories, or admissions on file that establish their alleged injury, as required by *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53, and Fed.R.Civ.P. 56(c). Even if Anthony could show "injury," they fail to "show a causal connection between [their] injury and" Miller's bribery. *Pelletier v. Zweifel*, 921 F.2d 1465, 1497 (11th Cir.), *cert. denied*, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991).

It is certainly not the Court's intent to reward a party for its alleged criminal behavior. However, this is a civil case. In establishing the essential elements of RICO, Anthony must prove that they suffered a cognizable injury by reason of an enumerated crime. Because they clearly fail to meet this burden, the Court seriously doubts whether Anthony is the type of victim contemplated by the Florida legislature when enacting the RICO statute. Indeed, there is record evidence that *Anthony* also bribed its customers in violation of the Florida Beverage Law. (*E.g.,* Docket No. 238, Exhibit G, p. 278). The Court grants summary judgment in favor of Miller with respect to Count XIII, Florida RICO.

## ANTHONY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

■ The only unresolved portion of Anthony's motion for partial summary judgment

(Docket No. 200) relates to Count VI of Miller's fourth amended counterclaim (Docket No. 243, p. 32–33, ¶¶ 41–47). In said count, Miller seeks declaratory relief, in that it wants to terminate its distributorship agreements with Anthony. The relevant portion of the parties' distributorship agreements provide, in pertinent part:

### 7. MILLER'S TERMINATION RIGHTS

(a)(i) Except as provided in subparagraph (b) below, Miller may at any time initiate termination in accordance with the procedures specified in this subparagraph if Distributor fails to comply with any commitment or undertaking stated in its application or with any of the obligations set forth in Paragraph 4 [entitled "Operation of Distributor"] of this Agreement. Miller shall *initiate such termination by providing written notice to Distributor which shall state the nature of Distributor's noncompliance.* Subject to extensions granted at Miller's sole discretion, *Distributor shall then have thirty (30) days in which to submit a plan of corrective action and an additional sixty (60) days to cure such noncompliance in accordance with such plan.* If the Distributor fails to cure on a timely basis, Miller shall have the right to terminate this Agreement immediately upon written notice.

\* \* \* \* \* \*

(b) If any of the following events occur, *Miller shall have the right to terminate this Agreement immediately upon giving written notice* without any obligation on Miller's part to follow the procedures ...:

\* \* \* \* \* \*

(ii) Distributor's fraudulent conduct or substantial misrepresentation in any of its dealings with Miller or with others concerning Miller products.

\* \* \* \* \* \*

(viii) Distributor's failure to undertake a good-faith effort to cure noncompliance pursuant to subparagraph (a) of this Paragraph 7.

(Docket No. 1, Exhibit "A") (emphasis added). Anthony moves for partial summary judgment, arguing that Miller failed to sufficiently notify them of termination pursuant to the Paragraph 7 of the distributorship agreements.[8] Miller contends that its rights to terminate immediately "under section 7(a) were triggered when Miller's counterclaim—constituting notice—was filed. All the remaining acts—acts which might have cut-off Miller's termination rights—were for plaintiffs to perform, not Miller." (Docket No. 226, p. 6).

Thus, this issue is one of contract interpretation, which is a matter of law to be determined by the Court, in that the relevant contract provisions relate to timing and conditions. *DEC Electric, Inc. v. Raphael Construction Corp.*, 558 So.2d 427, 428 (Fla. 1990). Readily apparent from the face of the contract, the obvious intent of the parties behind Paragraph 7 was to avoid litigation. Indeed, this paragraph purports to install an internal problem-solving procedure. If Miller finds a problem with a distributor, it must specifically notify it of such problem in writing. The distributor then has an absolute right to propose curative action on its part. The only relevant exception to this right is under Paragraph 7(b)(ii), if the distributor engages in "fraudulent conduct or substantial misrepresentation." Otherwise, the distributor has thirty (30) days to propose a corrective plan, and sixty (60) days to effectuate it.

The Court concludes, as a matter of law, that Miller's counterclaim does not constitute sufficient "notice of termination" under Paragraph 7(a)(i) of the distributorship agreement. To hold otherwise would violate the intent of the parties and express terms of the contract. For example, both the Federal and Florida Rules of Civil Procedure require an adverse party to serve answers to complaints and counterclaims within twenty (20) days of being served. Fed.R.Civ.P. 12(a); Fla.R.Civ.P. 1.140(a)(1). Thus, if the Court were to adopt Miller's argument, a distributor would have to answer ten (10) days before the expiration of its thirty (30) day period in which to propose a solution. Such a result would be absurd. The Court grants partial summary judgment in favor of Anthony, but only with respect to said issue of law in Count VI of Miller's counterclaim.

## OTHER PENDING MATTERS

In light of the Court's rulings on Miller's Motion for Summary Judgment, the Court denies Anthony's Motion for Clarification of Scheduling Order (Docket No. 190) as moot. Similarly, the Court overrules Anthony's (1) Objections to Magistrate Judge Jenkins' Discovery Orders Entered August 12, 1996 (Docket No. 221) and (2) Objections to Magistrate Judge Jenkins' Discovery Order Entered August 7, 1996 (Docket No. 218) as moot. Accordingly, it is

**ORDERED** that

Defendant's Motion for Summary Judgment (Docket No. 198) be **GRANTED** with respect to Counts II, III, VII, VIII, and XIII of Plaintiffs' Third Amended Complaint;

The parties be **ADVISED** that, based on this Order and previous determinations of the Court, there are no surviving counts in said complaint;

Plaintiff's Motion for Partial Summary Judgment (Docket No. 200) be **GRANTED IN PART** (as to the issue of law in Count VI of Miller's Fourth Amended Counterclaim, discussed herein) and **DENIED IN PART** (as to Count XIII of Plaintiffs' Third Amended Complaint, discussed herein);

The parties be further **ADVISED** that the following counts remain for trial in the counterclaim: Count I (breach of contract); Count II (fraud); Count III (breach of duty of good faith and fair dealing); and Count IV (federal trademark infringement pursuant to 15 U.S.C. § 1114(1)); Count V (use of false descriptions and false representations pursuant to 15 U.S.C. § 1125(a)); and Count VI (declaratory relief, to the extent not foreclosed by this Order);

---

**8.** Each plaintiff has a separate, but identical, distributorship agreement with Miller.

Plaintiff's Motion for Clarification (Docket No. 190) be **DENIED;**

Plaintiffs' Objections to Discovery Order Entered August 7, 1996 (Docket No. 218) be **OVERRULED;** and

Plaintiff's Objections to Discovery Order Entered August 12, 1996 (Docket No. 221) be **OVERRULED.**

**DONE AND ORDERED.**